2021 IL App (1st) 181237

FIFTH DIVISION
MARCH 26, 2021

No. 1-18-1237

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 99 CR 2775 |
| | ) | |
| REGINALD BENFORD, | ) | Honorable |
| | ) | Diane Cannon, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant-appellant Reginald Benford, who was convicted of first degree murder, appeals the denial of leave to file his successive postconviction petition. On appeal, the defendant argues that he has established cause and prejudice sufficient to require consideration of his successive postconviction petition alleging that his 40-year sentence violated the United States and Illinois Constitutions. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 2 BACKGROUND

¶ 3 In August 1998, the then 21-year-old defendant, Mr. Benford, shot and killed a fellow gang member, Davon Cook. Prior to his trial, the defendant was examined by a licensed clinical psychologist, who administered several psychological tests to the defendant. The verbal portion of the Wechsler Adult Intelligence Scale indicated that the defendant had an IQ of 63, which was in

the lowest one percentile of the population for that test. Also, the defendant received a verbal comprehension index score of 68, which placed him in the second percentile, and a working memory score of 55, equivalent to the lowest one-half of one percentile of the population for that test. The psychologist determined that the defendant was "of mildly retarded intellectual functioning."

¶ 4    Following a jury trial in 2001, the defendant was convicted of first degree murder in Mr. Cook's death. At sentencing, the court considered the aggravating factor of the defendant's 8-year criminal history against the mitigating factor that the defendant had begun to study bible scripture and was attempting to reform his behavior. The court determined that a minimum sentence would "deprecate [*sic*] the seriousness of the offense" and sentenced the defendant to 40 years' imprisonment. The defendant appealed, alleging, in relevant part, that his 40-year sentence was excessive, in light of his youth, mental retardation, personal history, and potential for rehabilitation. This court rejected his claim and affirmed his conviction and sentence. *People v. Benford*, 349 Ill. App. 3d 721, 737 (2004). The defendant's initial *pro se* postconviction petition, filed in 2006, was likewise unsuccessful.

¶ 5    On December 20, 2017, the defendant sought leave to file a successive *pro se* postconviction petition alleging, *inter alia*, that his sentence violated the principles of *Miller v. Alabama*, 567 U.S. 460 (2012). Specifically, he argued that his 40-year sentence was a *de facto* life sentence which was imposed without taking into consideration his status as an emerging adult with an intellectual disability and, as such, the sentence was unconstitutional.

¶ 6    On March 8, 2018, in an oral ruling from the bench, the trial court denied the defendant leave to file his successive postconviction petition. The defendant appealed.

¶ 7                                    ANALYSIS

¶ 8    We note that we have jurisdiction to review this matter, as the defendant timely appealed. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 9    The Post-Conviction Hearing Act (Act) allows a defendant who is imprisoned in a penitentiary to challenge his conviction or sentence based on the denial of his constitutional rights. 725 ILCS 5/122-1 (West 2016). The Act ordinarily contemplates the filing of a single postconviction petition (*People v. Brown*, 2017 IL App (1st) 150132, ¶ 35) and explicitly states that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived" (725 ILCS 5/122-3 (West 2016)). This is because successive postconviction petitions " 'plague the finality of criminal litigation.' " *Brown*, 2017 IL App (1st) 150132, ¶ 36 (quoting *People v. Tenner*, 206 Ill. 2d 381, 392 (2002)).

¶ 10    Because successive postconviction petitions are so disfavored, a defendant must obtain leave of court prior to filing such a petition. 725 ILCS 5/122-1(f) (West 2018). And a court should only grant leave where a defendant can show either (1) cause and prejudice for failure to raise the claim earlier or (2) a " 'fundamental miscarriage of justice,' " also known as a claim of actual innocence. See *People v. Edwards*, 2012 IL 111711, ¶¶ 22-23. "Cause" is an objective factor that impeded the defendant's ability to raise the claim earlier (*People v. Guerrero*, 2012 IL 112020, ¶ 17), while "prejudice" occurs when the alleged constitutional error so infected the entire trial that the resulting conviction or sentence violates due process (*People v. Ortiz*, 235 Ill. 2d 319, 329 (2009)). We review *de novo* a trial court's denial of leave to file a successive postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 11    In the defendant's successive postconviction petition in this case, he contends that his 40-year sentence imposed for a crime he committed at the age of 21 violated the United States and Illinois Constitutions. To establish cause for failure to raise this claim earlier, the defendant points

to recent case law governing the sentencing of juveniles, beginning with *Miller*, 567 U.S. 460. In *Miller*, the United States Supreme Court held that mandatory life sentences without the possibility of parole imposed on juveniles were unconstitutional because the sentences prevented the trial court from considering the mitigating characteristics of youth. *Id.* at 476, 489. Since the *Miller* decision, jurisprudence regarding juvenile sentencing has continued to evolve. Our supreme court, over the course of several cases, has held that a life sentence, whether natural or *de facto*, whether mandatory or discretionary, is unconstitutional for juveniles where the trial court did not consider the mitigating qualities of youth which were highlighted in *Miller*. *People v. Reyes*, 2016 IL 119271, ¶ 9; *People v. Holman*, 2017 IL 120655, ¶ 40.

¶ 12　　But this jurisprudence related to the eighth amendment of the United States Constitution as discussed in *Miller*, and its progeny, is limited to *juvenile* offenders. The defendant was 21 years old when he murdered Mr. Cook, therefore he does not fit within the parameters of *Miller*. Instead, the only avenue open to the defendant would be cases interpreting section 11 of article I of the Illinois Constitution, also known as the proportionate penalty clause. Ill. Const. 1970, art. I, § 11. The proportionate penalties clause is implicated when a defendant's sentence is cruel, degrading, or so wholly disproportionate to the offense so as to shock the moral conscience of the community. *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 67 (citing *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005)). The proportionate penalties clause of the Illinois Constitution provides broader protection than the eighth amendment of the United States Constitution (U.S. Const., amend VIII). *People v. Clemons*, 2012 IL 107821, ¶ 40. Our supreme court has suggested that life sentences for "emerging adults" may violate the proportionate penalties clause, although they may not violate the eighth amendment of the United States Constitution. See *People v. Harris*, 2018 IL 121932, ¶ 40 (reversing appellate court's holding that 18-year-old defendant's 76-year sentence violated

proportionate penalties clause, solely on the basis that defendant failed to raise as-applied challenge to his sentence in trial court); see also *People v. Ross*, 2020 IL App (1st) 171202, ¶ 20 (recognizing that law is trending toward increased protection for young adult offenders, in addition to juveniles).

¶ 13      While these recent cases may establish "cause" for the defendant's failure to raise the claim that his sentence was unconstitutional in his initial postconviction proceedings in 2006, the defendant must still demonstrate that he suffered prejudice. His claim of prejudice turns on whether his 40-year sentence amounts to a *de facto* life sentence. In *People v. Buffer*, 2019 IL 122327, ¶ 40, our supreme court drew a line at 40 years in order for a prison term to be considered a *de facto* life sentence.[1]

¶ 14      The defendant argues that *Buffer* is ambiguous and that his 40-year prison term amounts to a *de facto* life sentence. We disagree. *Buffer* could not be more clear. The court stated: "We hereby conclude that a prison sentence of *40 years or less* imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment." (Emphasis added.) *Id.* ¶ 41. At exactly 40 years, the defendant's sentence does not constitute a *de facto* life sentence. See *Villalobos*, 2020 IL App (1st) 171512, ¶ 63 (rejecting the juvenile defendant's claim that his 40-year sentence amounted to a *de facto* life sentence under *Buffer* on ground that "[t]here is no way to interpret '40 years or less' as '40 years or more' ")

¶ 15      The defendant's argument that we should include his mandatory supervised release (MSR) term in his prison sentence likewise fails. The defendant maintains that with the addition of his 3-

---

[1] Although *Buffer* considered the constitutionality of life sentences for juveniles under the eighth amendment in articulating this bright-line rule, neither party argues that the line should be drawn differently for emerging adults under the proportionate penalties clause.

year MSR term, his 40-year prison sentence is effectively a 43-year sentence amounting to *de facto* life imprisonment. Not so. The MSR term, while part of the sentence, is *not imprisonment*. *Id.* ¶ 64. Accordingly, it is not included when considering whether a defendant's prison sentence constitutes a life sentence. *Id.*; see also *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 140 (rejecting identical argument and holding that *Buffer* referred to *prison* sentence).

¶ 16    Because the defendant did not receive a life sentence, either natural or *de facto*, he cannot establish the prejudice requirement necessary to excuse his failure to raise the claim that his sentence was unconstitutional at an earlier proceeding.[2]

¶ 17                                         CONCLUSION

¶ 18    For the reasons stated, we affirm the circuit court of Cook County's denial of leave to file a successive postconviction petition.

¶ 19    Affirmed.

---

[2] To the extent the defendant argues that his 40-year sentence, even if not a *de facto* life sentence, nevertheless violates the proportionate penalties clause, this claim is forfeited for failure to raise it on direct appeal. See *People v. Lenoir*, 2021 IL App (1st) 180269, ¶ 27 (under the Act, issues that could have been raised on direct appeal are forfeited).

---

**No. 1-18-1237**

---

| | |
|---|---|
| **Cite as:** | *People v. Benford*, 2021 IL App (1st) 181237 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 99-CR-2775; the Hon. Diane Cannon, Judge Presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia G. Mysza, Douglas R. Hoff and Brett C. Zeeb, of State Appellate Defender, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, Assistant State's Attorneys, of counsel), for the People. |

---