2022 IL App (1st) 192603-U

FIFTH DIVISION
April 15, 2022

No. 1-19-2603

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 09 CR 19310 |
| | ) | |
| EUGENE RILEY III, | ) | Honorable Diana L. Kenworthy, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

*Held:* Defendant's motion for leave to file a successive postconviction petition was properly denied where he failed to satisfy the cause-and-prejudice test in arguing that his 32-year sentence was unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution; affirmed.

¶ 1    Following a jury trial, petitioner, Eugene Riley, was found guilty of first degree murder predicated on the forcible felony of mob action for the beating death of 16-year-old Derrion Albert. Riley was 18 years old at the time of the murder and was sentenced to 32 years' imprisonment. This court affirmed his conviction on direct appeal. *People v. Riley*, 2014 IL App

(1st) 112464-U (unpublished order pursuant to Supreme Court Rule 23). Riley filed a *pro se* postconviction petition, which was summarily dismissed. This court affirmed the circuit court's dismissal of his petition. *People v. Riley*, 2016 IL App (1st) 142361-U. Riley then filed a motion for leave to file a successive postconviction petition, which was denied because he failed to satisfy the cause and prejudice test. For the following reasons, we affirm the circuit court's denial of Riley's motion for leave to file a successive postconviction petition.

¶ 2                                      I. BACKGROUND

¶ 3       In *Riley*, 2013 IL App (1st) 112464-U, we discussed the facts of this case. We will reiterate them here only as necessary for our analysis. On the afternoon of September 24, 2010, a fight broke out near Agape Community Center (Agape) on 111th Street in the Roseland neighborhood of Chicago. Christian Fenger Academy (Fenger) is a high school in that area. At the time of the incident, due to school closings, students that lived in Altgeld Gardens (the Gardens), like Riley, were attending Fenger.

¶ 4       T-Awannda Piper, a staff member at Agape, testified at trial that she saw the fight from a window of the school. She saw a young man hit the victim over the head with a board. The victim then fell to his knees. When the victim tried to get up, another young man punched him in the face. The victim fell to the ground. He was sitting with his hands in the air. Piper then saw another young man kick the victim, which caused the victim to fall back. Other young men began to kick him as well.

¶ 5       Piper went outside and when she saw a car drive by, she asked the driver to help. She and the driver were able to drag the victim inside Agape. An ambulance transported the victim to the hospital.

¶ 6     A videotape of the Agape surveillance video and a video taken on someone's phone were played for the jury.

¶ 7     Riley was interviewed at the police station on September 27, 2010. He stated that on the day in question he and his brother went to pick up their cousin from school because there had been talk of their cousin being "jumped" after school. Riley admitted to being involved in the fight but denied having a stick.

¶ 8     A video was entered into evidence that contained footage of the beating, which had been slowed down with an arrow pointing to Riley. Riley was shown hitting a young man who was wearing a white shirt several times. The victim is shown being hit by other young men, and falling to the ground. He is shown being kicked by others. The video then shows Riley picking up a board and running after people. Riley then takes a running start with the board over his head and hits the victim with it while the victim is laying in the street. Riley then walked away with the board.

¶ 9     Dominic Johnson testified that he was attending Fenger at the time of the incident. He saw Riley hit the victim with a stick and that after he did so, the victim just laid there in the street. Johnson identified Riley in the slowed-down video.

¶ 10     Doctor Hilary McElligott, an assistant medical examiner, performed the autopsy on the victim. She testified that the victim died of "cerebral injuries that were caused by blunt head trauma as a result of assault."

¶ 11     Riley testified on his own behalf, stating that he had been hit by a stick earlier in the fight, and became dizzy. He hit the victim because he was scared and did not know what was going on.

¶ 12    At the close of evidence, the jury found Riley guilty of first degree murder. A sentencing hearing was held on July 19, 2011. The circuit court noted that it was in receipt of the presentence investigation report (PSI), and that it had been tendered a series of psychological reports and a record of hospitalization from when Riley was 11 years old related to "behavioral issues."

¶ 13    The State argued in aggravation that Riley struck the victim several times in the head while the victim was defenseless and lying on the ground.

¶ 14    In mitigation, defense counsel stated that Riley came from "a strong family that's very connected." Riley had "issues" when he was younger and was hospitalized. Riley was suicidal at one point, as noted in the social investigation. He had been taken from his mother and had anger issues. Defense counsel argued that Riley was a good young man, but had gone too far in a felony murder, not an intentional murder. Defense counsel asked for a sentence close to the minimum sentence.

¶ 15    Riley then stated in part in allocution that his parents had taught him to be respectful, that he had asked the Lord for forgiveness, and that he "never meant to participate and cause anyone's life to be taken. I was a teenager with an immature mind. [I] didn't know the consequences of my actions."

¶ 16    The circuit court sentenced Riley to 32 years in prison, followed by 3 years of mandatory supervised release. The court noted that the sentence was based on the PSI, the evidence and arguments presented in mitigation and aggravation, the statutory factors in aggravation and mitigation, the financial impact of incarceration, the victim impact statements, and Riley's statement that was made in open court. The court also stated:

"When you are 18, and 19, and 20 you made bad decisions. That's part of the deal. But we always hope there's something within all of us that gnaws at our conscience and tells us when we're about to do something that [Riley] did in this case. *** But when it comes right down to it my sentence has to reflect the seriousness of the conduct in this case. And it was serious. The peril that everyone was placed in as these young men were out there attacking one another is real. And it needs to be punished directly."

¶ 17    The court denied Riley's motion to reconsider sentence.

¶ 18    On direct appeal, Riley argued that his felony murder conviction should be vacated because the mob action that served as a predicate for felony murder was inherent in the murder, the court failed to properly instruct the jury on felony murder, defense counsel was ineffective, and the circuit court failed to comply with Illinois Supreme Court rules during jury selection. We affirmed the circuit court's dismissal on appeal. *Riley*, 2013 IL App (1st) 112464-U.

¶ 19    On March 27, 2014, Riley filed his initial *pro se* postconviction petition claiming in part actual innocence and ineffective assistance of both trial and appellate counsel. The circuit court summarily dismissed the petition as frivolous and patently without merit, and we affirmed that decision. *Riley*, 2016 IL App (1st) 142361-U, ¶ 7.

¶ 20    On May 22, 2019, Riley filed a motion for leave to file a successive postconviction petition. He alleged his 32-year sentence was a *de facto* life sentence, and that it violated the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. He argued that the life expectancy of a "a twenty-year-old Black Male is 51.7 years" and he would not be eligible for parole until he was 50 years old, and therefore his

sentence of 32 years when he was 18 years old amounted to a *de facto* life sentence. Riley also highlighted his rehabilitation efforts by stating that he:

"maintained a job on April 24, 2018 as a porter, and is now working in the kitchen, that I started on November 26, 2018. I have copied sign letter from Menard's Correctional Center Warden showing that she extend her appreciation for my efforts during the recent flood event that happen there. I have accumulated multiple certificates during my incarceration, such as a Bible Correspondence Course Certificate on September 16, 2016, on August 30, 2016 I received a Division of Adult Education and Vocational Services Certificate of Accomplishment, on April 6, 2016, I received a Drug Education Certificate, on July 26, 2016 I received houses of Healing Certificate and a Master Craftsman Certificate of Completion. See Exhibits. These pursuits and achievements coincides with the scientific evidence and the United States Supreme Court's holdings and the evolving filed of jurisprudence by Illinois Courts that juveniles and young adults possess 'diminished culpability' and 'greater prospects for reform.' "

¶ 21    On October 3, 2019, the circuit court denied Riley leave to file his petition. In the court's order, it stated that Riley did not "provide any facts about his circumstances at the time of the offense that can be used in an as applied challenge." It noted that Riley "lists his accomplishments from 2016 through 2018, while incarcerated." The court stated that Riley wanted it to look solely at his rehabilitative potential and not his PSI or factors that were introduced at sentencing. It noted that Riley "cannot have the court ignore those considerations and give a greater weight to his conduct for two out of the eight years he has been incarcerated."

And moreover, the court found that Riley's sentence was not a *de facto* life sentence. The Illinois Supreme Court has specifically determined that a prison sentence of 40 years or less does not amount to a *de facto* life sentence. See *People v. Buffer*, 2019 IL 1222327, ¶ 41. The court found that Riley's sentence of 32 years did not amount to a *de facto* life sentence under *Buffer* and therefore he was precluded from arguing that *Miller*-like protections applied to him as a young adult. Riley now appeals.

¶ 22                                 II. ANALYSIS

¶ 23    On appeal, Riley contends that the trial court erred in denying his motion for leave to file a successive postconviction petition because he met the cause and prejudice test. The State maintains that Riley failed to meet the cause and prejudice test where he did not receive a *de facto* life sentence and therefore *Miller*-like protections did not apply to him. For the following reasons, we agree with the State.

¶ 24    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a statutory mechanism for a criminal defendant to assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2020). The Act contemplates the filing of only a single petition. *People v. Robinson*, 2020 IL 123849, ¶ 42. However, the bar against a successive filing will be relaxed in two situations. First, a defendant may raise a constitutional claim by satisfying the cause-and-prejudice test. *Id*. Second, a defendant may assert a claim of actual innocence. *Id*. Prior to filing a successive postconviction petition, a petitioner must obtain leave of the circuit court. *Id*. ¶ 43. Our review of the court's denial of a motion seeking leave to file is *de novo. Id*. ¶ 39.

¶ 25     Because Riley is claiming his sentence is unconstitutional as applied to him, he must establish cause and prejudice. To establish cause, a petitioner must show some objective factor external to the defense that impeded his ability to raise the claim in his initial postconviction proceeding. *People v. Pitsonbarger*, 205 Ill. 2d 444, 460 (2002). We find that because *Miller* had not been decided at the time Riley filed his initial postconviction petition, this prong has been met.

¶ 26     To establish prejudice, the defendant must show the claimed constitutional error so infected his trial that the resulting conviction violated due process. *Id.* At 464. The cause-and-prejudice test for a successive postconviction petition applies a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act. *People v. Edwards*, 2012 IL 111711, ¶¶ 26-27. To meet the cause-and-prejudice test for a successive petition requires the defendant to "submit enough in the way of documentation to allow a circuit court to make that determination." *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010). "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentations submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35. Here, we find that Riley's claim fails as a matter of law.

¶ 27     The eighth amendment of the United States Constitution, which is applicable to the states through the fourteenth amendment, prohibits the government from imposing "cruel and unusual punishments" for criminal offenses. *Roper v. Simmons*, 543 U.S. 551, 560 (2005). The eighth amendment guarantees people the right not to be subjected to excessive sanctions. *Id.* The right flows from the "precept of justice that punishment for crime should be graduated and

proportioned to [the] offense." *Weems v. United States*, 217 U.S. 349, 367 (1910). "By protecting even those convicted of heinous crimes, the Eighth Amendment reaffirms the duty of the government to respect the dignity of all persons." *Roper*, 543 U.S. at 560. The Supreme Court explained:

> "The prohibition against 'cruel and unusual punishments,' like other expansive language in the Constitution, must be interpreted according to its text, by considering history, tradition, and precedent, and with due regard for its purpose and function in the constitutional design. To implement this framework, we have established the propriety and affirmed the necessity of referring to 'the evolving standards of decency that mark the progress of a maturing society' to determine which punishments are so disproportionate as to be cruel and unusual." *Id.* at 560-61.

¶ 28 When the offender is a juvenile and the offense is serious, there is a genuine risk of disproportionate punishment. *People v. Holman*, 2017 IL 120655, ¶ 33. In *Roper*, *Graham*, and *Miller*, the United States Supreme Court addressed that risk and concluded that youth matters in sentencing. *Roper* held that the eighth amendment prohibited capital sentences for juveniles who commit murder. 543 U.S. at 578-79. *Graham* held that the eighth amendment prohibited mandatory life sentences for juveniles who commit nonhomicide offenses. 560 U.S at 83. And *Miller* held that the eighth amendment prohibited mandatory life sentences for juveniles who commit murder. 567 U.S. at 489-90.

¶ 29 Importantly, our supreme court in *Holman*, 2017 IL 120655, ¶ 43, adopted the *Miller* factors. Yet, as our supreme court has noted, the United States Supreme Court "has clearly and consistently drawn the line between juveniles and adults for the purpose of sentencing at the age

9

of 18." *People v. Harris*, 2018 IL 121932, ¶ 58. It stated that "claims for extending *Miller* to offenders 18 years of age or older have been repeatedly rejected." *Id.* ¶ 61.

¶ 30       Riley was 18 years old when he committed his crime, and therefore was foreclosed from making a *Miller* claim under the eighth amendment. However, the proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Our supreme court has explained that this emphasis on rehabilitative potential provides "a limitation on penalties beyond those afforded by the eighth amendment." *People v. Clemons*, 2012 IL 107821, ¶¶ 39-41. And it has acknowledged that young adult offenders are "not necessarily foreclosed" from raising as-applied challenges to life sentences based on the evolving science on juvenile maturity and brain development under the proportionate penalties clause. *People v. Harris*, 2018 IL 121932, ¶¶ 46, 48. See *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44 (the as-applied, youth-based sentencing claim of an 18-year-old offender would be more appropriately raised in postconviction proceedings rather than on direct appeal); see also *Harris*, 2018 IL 121932, ¶ 48. "The court has thus opened the door to the possibility that a young-adult offender might demonstrate, through an adequate factual record, that his or her own specific characteristics were so like those of a juvenile that imposition of a life sentence absent the safeguards established in *Miller* was 'cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community.' " *People v. Zumot*, 2021 IL App (1st) 191743, ¶ 27 (quoting *People v. Klepper*, 234 Ill. 2d 337, 348 (2009)).

¶ 31       Because Riley's sentence was not a life sentence, his claim of prejudice turns on whether his 32-year sentence amounts to a *de facto* life sentence. It does not. In *Buffer*, 2019 IL 122327, ¶ 40, our supreme court drew a line at 40 years for a prison term to be considered a *de facto* life

sentence, stating, "[w]e hereby conclude that a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence." Because Riley's sentence was not a *de facto* life sentence, his youth-based challenge to his sentence pursuant to the proportionate penalties clause fails as a matter of law. See *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 25 (our supreme court has recently opened the door for young adult offenders to demonstrate that their own specific characteristics at the time of their offense were so like those of a juvenile that imposition of a *life sentence*, absent the safeguards in *Miller*, violated the proportionate penalties clause). See also *People v. Benford*, 2021 IL App (1st) 181237 ("[b]ecause the defendant did not receive a life sentence, either natural or *de facto*, he cannot establish the prejudice requirement necessary to excuse his failure to rise the claim that his sentence was unconstitutional at an earlier proceeding."). The court properly denied his motion for leave to file a successive postconviction petition.

¶ 32                                    III. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34    Affirmed.