2024 IL App (1st) 231046-U

No. 1-23-1046

Order filed August 5, 2024

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 17100 |
| | ) | |
| ARMANDO VELASQUEZ, | ) | Honorable |
| | ) | Joanne Rosado, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justice Lavin concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1    *Held*:  The second-stage dismissal of defendant's postconviction petition is affirmed over his contention that he received unreasonable assistance of postconviction counsel.

¶ 2    Defendant Armando Velasquez appeals from the second-stage dismissal of his petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, he contends that he received unreasonable assistance of postconviction counsel where counsel (1) failed to amend the *pro se* petition so that his claim that his 40-year sentence for

first degree murder while armed with a firearm violated the Illinois proportional penalties clause was in proper legal form or, (2) if he did not believe the petition could be amended to state a meritorious claim, failed to withdraw. For the reasons that follow, we affirm.

¶ 3     Defendant's conviction arose from the July 8, 2007, shooting death of Jorge Rivas in Chicago, when defendant was 21 years and 5 months old. Following a 2011 jury trial, defendant was found guilty of first degree murder under a theory of accountability. The trial court sentenced him to a total term of 40 years in prison: 25 years for the murder, plus 15 years for being armed with a firearm during the commission of the offense.

¶ 4     We set forth the underlying facts of the case in our order on direct appeal. *People v. Velasquez*, 2014 IL App (1st) 123366-U. However, due to the nature of defendant's current claim, we repeat some of those facts here.

¶ 5     Around 11 p.m. on July 8, 2007, Rivas was shot and killed in the driver's seat of his car. Three bullets entered the back of his head, three entered the right side of his head/neck, and stippling showed that four of the shots were fired at close range. The medical examiner who performed Rivas's autopsy opined that the shooter would have been positioned on his right, "most likely" in the back seat but, if Rivas had his head turned to the left, the shooter could have been in the front passenger seat. A disinterested witness heard the gunshots and then saw a man walk across her lawn holding his arm as though he had something in his hand. In a lineup and at trial, she identified defendant as the man she saw. A second disinterested witness also heard the shots. Five to ten minutes later, he saw a man exit Rivas's car and head in a direction that took him away from the first witness's home.

¶ 6      At the time of the murder, defendant, who sometimes worked for Rivas, lived with his girlfriend, Lucia Martinez, and his friend, Jonathan Ortiz. The police arrested defendant at their apartment about three weeks after the shooting.

¶ 7      Martinez testified that, the day after the murder, defendant told her that he shot Rivas. Ortiz testified that he overheard defendant tell Martinez that he killed Rivas. Ortiz then confronted defendant, who again stated that he killed Rivas.

¶ 8      The State presented portions of defendant's video-recorded statements to the police. At first, defendant told the police that he was at home with Martinez and Ortiz on the day of the murder. Eventually, defendant told them that Ortiz obtained a gun and gave it to a man named Anthony Buccio. Ortiz told Buccio to kill Rivas and ordered defendant to go with Buccio. Defendant told the police that Ortiz ordered him to accompany Buccio because Rivas trusted defendant. Defendant admitted that Rivas would not have let Buccio into his car if defendant had not accompanied Buccio. According to defendant, Ortiz threatened him, saying that "if something comes out wrong you're gonna die too." Ortiz also threatened that if defendant did not help, Ortiz would have "no choice" but to kill defendant, and that "if you open your mouth your family or your girl's gonna die."

¶ 9      Defendant told the police that Ortiz called Rivas several times and arranged for Rivas to pick up defendant and Buccio in his car. Defendant sat in Rivas's passenger seat and Buccio sat in the back seat. As they drove, Buccio shot Rivas. Defendant admitted that he told Martinez he shot Rivas, but he told the police he had only said that to make himself "look cool."

¶ 10    The jury found defendant guilty of first degree murder and of being armed with a firearm during the offense, but not guilty of personally discharging a firearm causing Rivas's death. Defendant filed a motion for a new trial, which the trial court denied.

¶ 11    At sentencing, defense counsel made corrections to the presentence investigation (PSI) report, which reflected, among other things, that defendant's criminal history included misdemeanor convictions in 2007 for criminal damage to property, driving on a revoked license, and driving on a suspended license, and in 2005 for disorderly conduct.

¶ 12    In aggravation, the State argued that defendant "bragged, he denied and he lied." The State emphasized that Rivas "took six bullets in his head" and that defendant was "neck deep in this murder" rather than a mere "grunt." The State argued for a sentence above the minimum for the purposes of deterrence and protection of the public.

¶ 13    Defense counsel argued that, even if defendant were to receive the minimum aggregate sentence of 35 years' imprisonment, he would not be released from incarceration until he was 58 or 59 years old. As such, counsel asserted that the minimum sentence would suffice to "send a message" and serve the purpose of deterrence. Counsel also argued that the minimum sentence was appropriate "given what the jury believes was his participation in this case," namely, that he did not fire the shots that killed Rivas. Further, counsel stressed that defendant was concerned for Martinez's safety, his criminal history consisted of only four misdemeanors, he was acting under a strong provocation, and his conduct was induced or facilitated by someone else. Counsel concluded that a minimum sentence would be "more than sufficient to protect the safety of the community and to send him the message and anyone else that if they are involved in a criminal

proceeding, which he still denies an intent to be involved in, that they will spend the major portion of their young life in prison."

¶ 14    The trial court stated that it had reviewed the PSI report and the factors in aggravation and mitigation. The court acknowledged the defense argument that defendant had been threatened to participate in the crime or "harm would come to him and his girlfriend," as well as the State's argument that defendant's actions belied that claim. The court noted that the jury "heard all of that" and still found defendant accountable for first degree murder and either accountable for Buccio's possession of a weapon or guilty of having possessed a weapon himself. The court stated that, even though defendant said he had been threatened, it was "very troubling" that he "was aware that the only way [Rivas] would become a victim is if [defendant] were along for the ride." The court sentenced defendant to 25 years for the murder, plus 15 years for possessing a firearm, for a total sentence of 40 years in prison.

¶ 15    Defendant filed a motion to reconsider sentence, asserting that his sentence was excessive in view of his background and the nature of his participation in the offense. In court, counsel rested on the motion, which the trial court denied.

¶ 16    On direct appeal, defendant contended that he was not proved guilty beyond a reasonable doubt, the trial court should not have given a jury instruction on accountability, trial counsel was ineffective for failing to offer an instruction on the necessity defense, and the prosecutor made remarks in closing that required reversal. We affirmed. *People v. Velasquez*, 2014 IL App (1st) 123366-U.

¶ 17    On March 30, 2018, defendant filed a *pro se* postconviction petition. Citing *Miller v. Alabama*, 567 U.S. 460 (2012), *People v. Harris*, 2018 IL 121932, *People v. House*, 2015 IL App

(1st) 110580, and unspecified "leading science" showing that "the human brain is not fully developed [un]til the age 24," defendant asserted that his 40-year sentence for a crime committed when he was "20 years old" constituted a *de facto* life sentence. He also argued, "Further under the Illinois constitution Article I section 11. Petition *de facto* life sentence does not allow for him to be placed back into society as the petitioner will be 61 years old upon release from I.D.O.C." As relief, defendant requested that he should be re-sentenced to "the minimum sentence of 20 years." Defendant did not attach any affidavits or other supporting documentation to his petition.

¶ 18    On March 30, 2018, the circuit court advanced the petition to the second stage because, due to a clerical error, the court did not receive the petition until almost a year after defendant mailed it.

¶ 19    Over the next two years, defendant's case was assigned and reassigned to several different attorneys in the public defender's office. On August 7, 2020, an assistant public defender appearing on defendant's behalf indicated he had defendant's records and asked for a continuance. The same counsel then appeared for defendant on several subsequent dates, seeking continuances so that he could, among other things, speak with defendant, wait for the Illinois Supreme court's decision in *House*, obtain an affidavit from defendant, obtain "additional mitigation," and complete his investigation.

¶ 20    On February 22, 2023, counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). In the certificate, counsel stated that he had (1) communicated with defendant to ascertain his claims of a deprivation of his constitutional rights; (2) examined the record, including the common law record, report of proceedings, and exhibits; and (3) examined

the *pro se* petition and was "not filing any additional amendments or supplementals as [defendant's] *pro se* filing adequately presents his claims."

¶ 21    The State filed a motion to dismiss defendant's petition, arguing that the reasoning of *Miller* and its progeny only applies to defendants who were under 18 at the time of their offense. The State further argued that, to the extent defendant had raised an " 'as-applied' challenge" to his sentence under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), he had not attached anything to his petition to support such a claim.

¶ 22    On May 22, 2023, the circuit court heard arguments on the motion to dismiss. The State argued that, where defendant was 21 years old at the time of the shooting, *Miller* did not apply. The State further argued that defendant had not indicated in his petition how a 40-year sentence amounted to a *de facto* life sentence as applied to him, and that there was "no basis in law for a resentencing of the petitioner 21 years old at 40 years." Defense counsel argued that defendant had made a substantial showing of a constitutional violation with regard to sentencing and asked the court to "take a novel approach" by (1) considering "parole years" as part of the sentence, which would "make his sentence *** over the 40 *de facto* life sentence line"; and (2) applying *Miller* to a 21-year-old defendant. The circuit court, stating only that it had read the petition and the motion to dismiss and had listened to the arguments of the parties, granted the State's motion to dismiss.

¶ 23    Defendant filed a timely notice of appeal.

¶ 24    On appeal, defendant contends that counsel's failure to either amend his petition or move to withdraw was unreasonable.

¶ 25    At the second stage of postconviction proceedings, appointment of counsel is a statutory, rather than constitutional, right. 725 ILCS 5/122-4 (West 2018); *People v. Suarez*, 224 Ill. 2d 37,

42 (2007). Under the Act, petitioners are entitled to a "reasonable" level of assistance of counsel. *People v. Addison*, 2023 IL 127119, ¶ 19. To ensure this level of assistance, Rule 651(c) imposes three duties on appointed postconviction counsel. *Id.* ¶ 20. Pursuant to the rule, either the record or a certificate filed by the attorney must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional deprivations, (2) examined the record of the trial proceedings, and (3) made any amendments to the filed *pro se* petition necessary to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Addison*, 2023 IL 127119, ¶ 20.

¶ 26    The filing of a Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel provided reasonable assistance, and substantial compliance with the rule is sufficient. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. A defendant bears the burden of overcoming the presumption of reasonable assistance by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c). *Id.* Our review of an attorney's compliance with Rule 651(c), as well as the dismissal of a postconviction petition without an evidentiary hearing, is *de novo*. *Id.* ¶ 17.

¶ 27    Here, postconviction counsel filed a Rule 651(c) certificate. Therefore, a presumption exists that defendant received the representation required by the rule. *Id.* ¶ 19. That is, a presumption exists that defendant received reasonable assistance of postconviction counsel. *People v. Hayes*, 2016 IL App (3d) 130769, ¶ 12.

¶ 28    Defendant acknowledges that counsel filed a Rule 651(c) certificate but argues that counsel did not fulfil the duties required by the rule because counsel failed to shape his *pro se* claim that his sentence was unconstitutional under the Illinois proportionate penalties clause into proper legal

form. He asserts that this claim would have been viable had counsel made "two routine amendments" to the petition: (1) including an allegation that appellate counsel was ineffective for failing to make a proportionate penalties claim on direct appeal, so as to overcome the procedural bar of forfeiture in postconviction proceedings; and (2) attaching a notarized affidavit executed by defendant. Defendant maintains that he does not need to show that he was prejudiced by counsel's unreasonable representation, as remand is required regardless of the merit of his underlying claim.

¶ 29    After carefully reviewing the record, we find that defendant has failed to overcome the presumption that he received reasonable assistance of counsel as contemplated by Rule 651(c). The purpose of Rule 651(c) is to ensure that postconviction counsel shapes the defendant's claims into a proper legal form and presents them to the court. *People v. Perkins*, 229 Ill. 2d 34, 44 (2007). To this end, postconviction counsel is not required to advance nonmeritorious claims on a defendant's behalf. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Thus, in this case, where the presumption of reasonable assistance is present, the determination of whether counsel acted reasonably by not filing an amended petition rests upon whether the claims in defendant's postconviction petition had merit. *People v. Nesbitt*, 2023 IL App (1st) 211301, ¶ 42; see also *People v. Bolden*, 2024 IL App (1st) 171479-UB, ¶¶ 37, 43-44 (holding that the merits of *pro se* claims are relevant in determining whether a defendant has rebutted the presumption of reasonable assistance and distinguishing *Addison*, 2023 IL 127119); Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered on or after January 1, 2021, may be cited for persuasive purposes).

¶ 30    To establish that postconviction counsel provided unreasonable assistance in this case, defendant is required to demonstrate that a petition amended in the manner he suggests would have stated a case upon which relief could be granted. See *People v. Vasquez*, 356 Ill. App. 3d 420, 425

(2005) ("to establish that postconviction counsel provided inadequate representation, defendant must show that the petition could have been amended to state a case upon which relief could be granted"). That is, defendant must show that his claim, as amended, would have had merit. Here, the question is whether second-stage relief would be appropriate on a claim that appellate counsel was ineffective for not arguing on direct appeal that defendant's 40-year sentence violates the Illinois proportionate penalties clause.

¶ 31    We cannot find that the petition could have been amended to make a substantial showing that appellate counsel was ineffective in this respect. Defendant's claim of ineffective assistance of appellate counsel—which he asserts postconviction counsel should have included in an amended petition—is, at its core, a claim that his sentence violates the proportionate penalties clause. The proportionate penalties clause states that "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "The Illinois Constitution does not limit a proportionate penalties challenge to just juveniles or individuals with life sentences." *People v. Hilliard*, 2023 IL 128186, ¶ 29. Rather, an adult defendant may challenge a sentence of any length as violative of the proportionate penalties clause. *Id.*

¶ 32    To succeed on a proportionate penalties claim, a defendant must show that his sentence is so disproportionate to the offense as to violate the constitution. *People v. Howard*, 2021 IL App (2d) 190695, ¶ 40. Stated differently, "[t]he proportionate penalties clause is implicated when a defendant's sentence is cruel, degrading, or so wholly disproportionate to the offense so as to shock the moral conscience of the community." *People v. Benford*, 2021 IL App (1st) 181237, ¶ 12. Punishments that satisfy this standard have not been specifically defined because society and its

concepts of elemental decency and fairness evolve over time. *Hilliard*, 2023 IL 128186, ¶ 20. As such, when considering a proportionate penalties claim on appeal, we will "review the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." *People v. Miller*, 202 Ill. 2d 328, 340 (2002).

¶ 33     Here, the jury found defendant guilty of first degree murder. 720 ILCS 5/9-1(a)(1) (West 2006). The sentencing range for first degree murder, absent any enhancements, is 20 to 60 years' imprisonment. 730 ILCS 5/5-4.5-20(a)(1) (West 2010). The jury also found that defendant was armed with a firearm during the commission of the murder. This circumstance subjected him to a mandatory firearm enhancement of 15 years' imprisonment. 730 ILCS 5/5-8-1(a)(1)(d)(i) (West 2010). Thus, defendant faced an aggregate sentencing range of 35 to 75 years' imprisonment.

¶ 34     Defendant argues that several facts contained in the record support his argument that his aggregate 40-year sentence violates the proportionate penalties clause and, therefore, could have been relied on by appellate counsel to make such a claim on direct appeal. Specifically, he argues that he was only 21 years old at the time of the murder; his criminal record was minimal; his conviction was based on accountability and the "only role he played in the murder was agreeing to ride along with [Buccio], since [Rivas] would not get in the car otherwise"; he did not fire the shots that killed Rivas; and he "only agreed to go along with the plan because *** Ortiz threatened to kill him and his girlfriend if he refused." He maintains that his young age, his limited role in the offense, and "the fact that he was pressured to participate against his will" support his claim that his 40-year sentence is cruel, degrading, or so wholly disproportionate to the offense so as to shock the moral sense of the community.

¶ 35    We note that, if defendant were to receive the ultimate relief on his claim, *i.e.*, resentencing, it would require remanding the case to the trial court for consideration of facts and circumstances that the record clearly shows it took into consideration in determining defendant's sentence. Defendant's young age and minimal criminal history were reflected in the PSI report and highlighted by counsel in mitigation. Counsel also stressed that defendant had not been found guilty of being the shooter, that he had participated in the murder because he had been threatened, and that he acted out of concern for his girlfriend's safety. The trial court acknowledged those arguments but also appropriately considered the seriousness of the crime, finding it "troubling" that defendant knew Rivas would not have let Buccio into his car without defendant's participation. See *People v. Elizondo*, 2021 IL App (1st) 161699, ¶ 113 (the seriousness of the offense is the most important factor at sentencing). Rivas was shot in the head six times, with four of those shots fired at close range, in a premeditated murder that defendant not only knew was going to happen, but knew would not happen without his presence.

¶ 36    Given the brutal nature of the crime, we cannot find that defendant's sentence—five years over the minimum—is disproportionate to the offense so as to shock the moral sense of the community. As such, it does not violate the proportionate penalties clause. See, *e.g.*, *People v. Thompson*, 2022 IL App (1st) 200463, ¶¶ 49 (where the defendant shot the victim in the head, an extended-term sentence of 80 years did not shock the moral sense of the community); *People v. Hill*, 2022 IL App (2d) 200416, ¶¶ 9, 41 (where the defendant shot the victim multiple times, a 40-year sentence with no firearm enhancement did not shock the moral sense of the community); *People v. Villalobos*, 2020 IL App (1st) 171512, ¶¶ 32, 44, 69-70 (where the defendant shot the victim three or four times in the back, a 40-year sentence with no firearm enhancement did not

violate the proportionate penalties clause); *People v. Gunn*, 2020 IL App (1st) 170542, ¶¶ 42, 147-48 (where the defendant shot the victim twice, a 40-year sentence with no firearm enhancement did not shock the moral sense of the community); *People v. Streeter*, 2024 IL App (1st) 191825-UB, ¶¶ 85 (where the defendant was convicted of first degree murder on a theory of accountability, a 40-year sentence with no firearm enhancement did not shock the moral sense of the community); Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered on or after January 1, 2021, may be cited for persuasive purposes).

¶ 37    In summary, even if postconviction counsel had amended the petition in the manner defendant suggests, the petition would not have made a substantial showing of ineffective assistance of appellate counsel so as to survive the State's motion to dismiss. Defendant's underlying claim that his sentence violates the Illinois proportionate penalties clause cannot succeed. In these circumstances, postconviction counsel's failure to amend the petition to include a claim that appellate counsel was ineffective for not raising a proportionate penalties challenge does not constitute unreasonable representation. Defendant has not rebutted the presumption that counsel satisfied Rule 651(c).

¶ 38    Defendant next argues that counsel's representation was unreasonable because the Act requires a notarized affidavit from the petitioner (see 725 ILCS 5/122-1(b) (West 2018)), but counsel failed to obtain such a notarized affidavit from him. In support of this contention, defendant relies on this court's decisions in *People v. Nitz*, 2011 IL App (2d) 100031, and *People v. Madison*, 2023 IL App (1st) 221360.

¶ 39    In *Nitz*, the defendant's *pro se* petitions did not include notarized section 122-1(b) affidavits, and appointed counsel filed an amended petition and a second amended petition, neither

of which included an affidavit. *Nitz*, 2011 IL App (2d) 100031, ¶¶ 4-7. The State moved to dismiss on grounds other than the defective affidavit, and the circuit court granted the motion. *Id.* ¶ 8. On appeal, this court concluded that counsel should have sought to remedy the lack of a notarized affidavit and, therefore, provided unreasonable assistance. *Id.* ¶¶ 19, 21. In a special concurrence, one justice opined that the State had procedurally defaulted the issue regarding the affidavit, stating, "Once the State moved to dismiss on the merits and did not attack or move to dismiss on the issue of the lack of a notarized affidavit, the issue of the need for a proper affidavit, or for verification *by any means*, became moot." (Emphasis in original.) *Id.* ¶ 25 (McLaren, J., specially concurring).

¶ 40    In *Madison*, the *pro se* petition did not include a verification affidavit and appointed counsel filed a Rule 651(c) certificate, resting on the petition. *Madison*, 2023 IL App (1st) 221360, ¶¶ 19, 24. The State moved to dismiss, arguing, *inter alia*, that the defendant's failure to attach a verification affidavit to his *pro se* petition was a fatal procedural defect requiring dismissal. *Id.* ¶ 25. The State also argued the issue at the hearing on its motion, and the circuit court dismissed the petition because it did not include a verification affidavit. *Id.* ¶¶ 27, 44. On appeal, we held "that counsel's failure to amend the petition to include a verification affidavit, which was necessary to avoid second-stage dismissal on procedural grounds, constituted unreasonable assistance." *Id.* ¶ 39.

¶ 41    We find that neither *Nitz* nor *Madison* compels a finding of unreasonable representation in this case. Section 122-1(b) of the Act provides that "[t]he proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition (together with a copy thereof) verified by affidavit." 725 ILCS 5/122-1(b) (West 2018). At the first stage of

postconviction proceedings, the trial court evaluates only the merits of the petition's substantive claims, reserving for the second stage consideration of whether the petition complies with procedural rules. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Once counsel is appointed, then, at the second stage, counsel owes a duty to remedy any procedural defects, including the lack of a valid affidavit. *People v. Turner*, 2012 IL App (2d) 100819, ¶ 41 (citing *Nitz*, 2011 Ill. App (2d) 100031, ¶ 19).

¶ 42    As a procedural defect, the lack of a verification affidavit "is properly the subject of a motion to dismiss at the second stage of [postconviction] proceedings." *People v. Hommerson*, 2014 IL 115638, ¶ 14. However, if the State does not raise the issue in a motion to dismiss, a challenge to an absent or invalid affidavit is forfeited. *Turner*, 2012 IL App (2d) 100819, ¶¶ 42, 44, 46; see also *People v. Kirkpatrick*, 2012 IL App (2d) 100898, ¶¶ 25, 27 (rejecting a claim of unreasonable assistance where counsel failed to provide a notarized affidavit, but the State did not challenge the procedural defect in its motion to dismiss or at the hearing on the motion and "the purported notarization and certification issues became moot").

¶ 43    In this case, it is undisputed that the *pro se* petition did not include a notarized affidavit and that postconviction counsel did not obtain one to attach to the petition. But it is also undisputed that the State did not raise the issue of the affidavit's absence in its motion to dismiss or at the hearing on the motion, and nothing in the record indicates that the trial court granted the motion on that basis. In this way, the instant case is distinguishable from *Madison*. Here, the State procedurally defaulted the issue (see *Turner*, 2012 IL App (2d) 100819, ¶ 44; *Nitz*, 2011 IL App (2d) 100031, ¶ 25 (McLaren, J., specially concurring)) and, therefore, we cannot find unreasonable

assistance of postconviction counsel on this basis (see *Kirkpatrick*, 2012 IL App (2d) 100898, ¶¶ 25-29).

¶ 44    Defendant's final contention on appeal is that, if postconviction counsel did not believe the *pro se* petition could be amended to state a meritorious claim, he was obligated to withdraw under the reasoning of *People v. Greer*, 212 Ill. 2d 192 (2004), and *People v. Kuehner*, 2015 IL 117695. Defendant asserts that counsel's failure to withdraw in his case was unreasonable, as it deprived him of the opportunity to amend the petition himself or secure the aid of private counsel to do so. As relief, defendant asks us to remand for new second-stage proceedings with the appointment of new counsel. We reject defendant's arguments as to both *Greer* and *Kuehner*.

¶ 45    First, it is well-settled that, under *Greer*, an attorney who concludes that the claims in a *pro se* postconviction petition are frivolous may withdraw from the case. *Greer*, 212 Ill. 2d at 211. However, *Greer* does not compel counsel to withdraw from postconviction proceedings whenever a defendant's claims seem weak. *People v. Malone*, 2017 IL App (3d) 140165, ¶ 12. This is especially so in cases where, as here, the petition is advanced to second-stage proceedings on procedural grounds without the circuit court determining whether its claims are frivolous and patently without merit. As our supreme court recently explained in *People v. Huff*, 2024 IL 128492, ¶ 30, counsel has no duty to withdraw when he or she was appointed without a first-stage ruling by the circuit court and the petition "posits a weak legal claim but the claim is presented in the best possible legal form and there is no indication that counsel knew the claim was frivolous."

¶ 46    Here, the record does not show that postconviction counsel believed the *pro se* petition was frivolous. Rather, counsel argued to the court that defendant had made a substantial showing of a constitutional violation with regard to his sentencing and asked the court to consider defendant's

"parole years" as part of his sentence and to apply the *Miller* factors to his case. Defendant posits that counsel's request demonstrates he believed the petition to be meritless. To the contrary, we agree with the State that, by asking the circuit court to take "a novel approach" to the law, counsel was attempting to present defendant's weak legal claim in the best possible light.

¶ 47    Second, in *Kuehner*, our supreme court held that, where a *pro se* petition is advanced to the second stage of proceedings on an explicit finding by the circuit court that the petition is not frivolous or patently without merit, appointed postconviction counsel must "clean[ ] up" the *pro se* claims and present them for adjudication or file a motion to withdraw that includes an explanation why the court's initial assessment was incorrect. *Kuehner*, 2015 IL 117695, ¶¶ 20-21. Here, the circuit court made no first-stage finding regarding the merits of the claims in the *pro se* petition. Instead, the petition was docketed and moved to the second stage of proceedings due to a clerical error that resulted in the circuit court not receiving the petition until almost a year after defendant mailed it. As such, *Kuehner* does not apply.

¶ 48    In sum, postconviction counsel filed a Rule 651(c) certificate in the instant case, triggering the presumption of compliance with the rule. Defendant has not demonstrated any merit to his *pro se* postconviction claim that his sentence violates the Illinois proportionate penalties clause, and the lack of a notarized affidavit does not merit a finding of unreasonable assistance in this case. Defendant has failed to rebut the presumption of compliance. We cannot find that postconviction counsel provided an unreasonable level of assistance or was required to withdraw.

¶ 49    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 50    Affirmed.

¶ 51    JUSTICE PUCINSKI, specially concurring:

¶ 52     I concur with the majority on this matter. I write only to reinforce that the one easy thing that postconviction counsel could have and should have done was to obtain and attach Petitioner's affidavit to an amended Petition. It is only because the State chose to ignore this technical issue that it has become unimportant in this particular appeal. Postconviction counsel should not count on the State's benevolence and could easily have been stuck with an appeal about its own ineffectiveness that was crucial to the Petition.