2026 IL App (1st) 231635

No. 1-23-1635

Opinion filed March 27, 2026

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County, |
| | ) | Criminal Division. |
| v. | ) | |
| | ) | No. 01 CR 11391 |
| KENNETH SMITH, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Alfredo Maldonado, |
| | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Mikva concurred in the judgment and opinion.
Justice Oden Johnson dissented, with opinion.

**OPINION**

¶ 1    Defendant Kenneth Smith appeals the second-stage dismissal of his postconviction petition

(725 ILCS 5/122-1 *et seq.* (West 2018)) after the circuit court concluded that the petition was time-

barred and procedurally barred. On appeal, defendant argues that he received unreasonable

assistance of postconviction counsel because counsel did not cure various deficiencies in

defendant's *pro se* petition. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant was indicted on two counts of first-degree murder for the stabbing death of his

cousin, Will Vinable, in April 2001. Following a plea bargain conference pursuant to Illinois

Supreme Court Rule 402 (eff. July 1, 1997), in January 2004, defendant entered a plea of guilty to one count of first-degree murder in exchange for a sentence of 25 years' imprisonment followed by three years of mandatory supervised release.

¶ 4    Before pleading guilty, defendant moved unsuccessfully to suppress inculpatory statements that he made to police and prosecutors after his arrest. He claimed that before being interrogated, he had not been read his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)), he had requested counsel, and he had requested to call his mother to hire an attorney. He also claimed that Area 2 detectives physically beat him for the purpose of obtaining a statement and getting him to sign a consent to search.

¶ 5    After an evidentiary hearing, the circuit court denied the motion and found that defendant had cooperated with police from the moment they first approached him about the murder and he said, "you got me." The circuit court found that defendant had repeatedly been advised of his *Miranda* rights and that he had not been coerced physically, psychologically, or emotionally. His statements to police were freely and voluntarily given.

¶ 6    A month after pleading guilty, in February 2004, defendant moved *pro se* to withdraw his guilty plea complaining about his plea counsel. The circuit court denied the motion, but on appeal, this court reversed and remanded because it determined that the circuit court had not made a sufficient inquiry of defendant before allowing him to proceed *pro se* on the motion. *People v. Smith*, 365 Ill. App. 3d 356, 360 (2006).

¶ 7    On remand, after a succession of three appointed attorneys, defendant again proceeded *pro se* on his motion. He claimed, among other things, that he had not been adequately informed of the period of mandatory supervised release before pleading guilty. The circuit court denied

defendant's motion to withdraw his plea after finding that defendant had received effective assistance of plea counsel and that defendant had entered into the plea voluntarily. This court affirmed after concluding that defendant had been admonished that he would be subject to mandatory supervised release. *People v. Smith*, 2013 IL App (1st) 111906-U, ¶¶ 12, 15.

¶ 8     Defendant subsequently raised the same issues related to mandatory supervised release in a petition for writ of *habeas corpus* filed in federal district court. 28 U.S.C. § 2254(a) (2018). The district court quoted the transcript of the plea hearing that included the circuit court's admonition on mandatory supervised release: "[First degree murder] is punishable from 20 to 60 years in the Illinois DOC and includes three years of mandatory supervised release ***." (Brackets in original and internal quotation marks omitted.) *United States ex rel. Smith v. Lemke*, No. 13 C 5982, 2014 WL 812075, at *3 (N.D. Ill. Mar. 3, 2014). The district court subsequently denied defendant's petition. *Id.* at *4.

¶ 9     In September 2019, defendant petitioned for postconviction relief in a series of *pro se* filings. He claimed that his plea counsel was ineffective because he failed to explain the term of mandatory supervised release, he failed to adequately investigate claims of police abuse, and he failed to investigate that Vinable might have been on narcotics before defendant murdered him.

¶ 10    The circuit court advanced the petition to the second stage and appointed counsel to represent defendant. After defendant's counsel filed certificates pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), the State moved to dismiss. The State argued the petition was untimely, the claims related to mandatory supervisory release were barred by *res judicata*, and the other claims of ineffective assistance had been forfeited.

¶ 11 The circuit court concluded that defendant's claims were time-barred and procedurally barred, and the circuit court dismissed the petition. This timely appeal followed. Ill. S. Ct. R. 606 (eff. Mar. 12, 2021).

¶ 12                                    II. ANALYSIS

¶ 13 On appeal, defendant argues that his postconviction counsel failed to provide reasonable assistance in several respects: (1) counsel failed to attach a supporting affidavit; (2) counsel failed to attach Office of Professional Standards reports related to Area 2 police misconduct; (3) counsel failed to review the record from defendant's direct appeals; (4) counsel failed to correct misstatements by the State; and (5) counsel failed to amend the petition. The State contends that defendant has failed to overcome the presumption of reasonable assistance where counsel certified compliance with Illinois Supreme Court Rule 651(c) and no amendment could cure the time-bar and procedural defects in defendant's petition. We review whether postconviction counsel complied with Rule 651(c) and the dismissal of a postconviction petition at the second stage *de novo*. See *People v. Robinson*, 2020 IL 123849, ¶ 39; *People v. Collins*, 2021 IL App (1st) 170597, ¶ 31.

¶ 14 Under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)), the right to counsel is statutory, not constitutional, and a petitioner is entitled to "reasonable assistance" of counsel, a standard "significantly lower than the one mandated at trial by our state and federal constitutions." (Internal quotation marks omitted.) *People v. Huff*, 2024 IL 128492, ¶ 21. To ensure this level of assistance, Rule 651(c) imposes three duties on appointed postconviction counsel. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Either the record or a certificate filed by the attorney must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional

deprivations, (2) examined the record of the trial proceedings, and (3) made any amendments to the filed *pro se* petition necessary to adequately present the petitioner's contentions. *Id.*; *People v. Addison*, 2023 IL 127119, ¶¶ 19-20.

¶ 15 Here, each of defendant's postconviction attorneys filed certificates under Rule 651(c), which creates a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. A defendant bears the burden of overcoming the presumption of reasonable assistance "by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Id.*

¶ 16                                    A. Defendant's Petition Is Time-Barred

¶ 17 The circuit court concluded that defendant's petition was time-barred and also procedurally barred. What is of overriding significance is that defendant has never claimed actual innocence, and postconviction claims other than actual innocence are subject to the timing restrictions in the Act. 725 ILCS 5/122-1(c). Indeed, the record is quite the contrary. From the moment police first approached him about the stabbing death of his cousin, defendant acknowledged his culpability ("well you got me") and identified the knife in his apartment. Defendant's admission of guilt was formally memorialized in his plea, and it was supported by a factual basis that included his identification by three of his friends who witnessed the murder.

¶ 18 While a guilty plea does not foreclose an actual innocence claim, to prevail, the postconviction petitioner must meet a "more stringent" standard than that articulated in *People v. Washington*, 171 Ill. 2d 475, 489 (1996)—he must establish by clear and convincing evidence that "a trial would probably result in acquittal." *People v. Reed*, 2020 IL 124940, ¶¶ 48-49. Nowhere in the multiple filings that constitute defendant's postconviction petition does he claim innocence.

"Post-conviction counsel is only required to investigate and properly present the *petitioner's* claims." (Emphasis in original.) *People v. Davis*, 156 Ill. 2d 149, 164 (1993). As a consequence, his postconviction petition is governed by the time limits in the Act.

¶ 19     The Act provides that where a defendant pursues a direct appeal but does not seek review in the United States Supreme Court, his postconviction petition is due within six months of the time for filing a petition for *certiorari*: "If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c). The Illinois Supreme Court denied defendant's petition for leave to appeal on May 29, 2013, and a petition for *certiorari* to the United States Supreme Court was due 90 days thereafter (August 28, 2013). Thus, defendant's postconviction petition was due within six months: no later than February 28, 2014. Defendant, however, filed his postconviction petition on September 19, 2019, over five and a half years late.

¶ 20     Defendant acknowledges that his counsel filed Rule 651(c) certificates, but he argues that postconviction counsel's deficiencies rebut this presumption. Relevant to the time-bar, defendant argues on appeal that his postconviction attorneys were unreasonable in failing to amend his petition to establish that the delay in filing the petition was not due to defendant's culpable negligence. Culpable negligence "contemplates something greater than ordinary negligence and is akin to recklessness." *People v. Boclair*, 202 Ill. 2d 89, 108 (2002). The standard is comparable to the analysis under section 2-1401 of the Code of Civil Procedure in which "courts must often determine whether litigants have exercised due diligence or, conversely, have willfully disregarded

the process of the court or were so indifferent to it that they should be chargeable with culpable negligence." *Id.* at 107 (citing 735 ILCS 5/2-1401 (West 2000)).

¶ 21    Reasonable assistance under Rule 651(c) "requires counsel to amend an untimely *pro se* petition to allege any available facts necessary to establish that the delay was not due to the petitioner's culpable negligence." *People v. Perkins*, 229 Ill. 2d 34, 49 (2007). To comply with that duty, "counsel must inquire of the petitioner whether there is any excuse for the delay in filing." *Id.* Further, counsel "must also allege any excuse for the delay in filing apparent from the pleadings and the portions of the record counsel must review to present petitioner's claims." *Id.* at 49-50.

¶ 22    While counsel is obligated to allege facts excusing an untimely filing if such facts exist, there is no indication that any such facts were available here. The petition alleges that "around Jan 2017," defendant learned of systemic abuse claims related to Area 2, including the *Wrice* case, the Egan Report and other OPS reports. See *People v. Wrice*, 2012 IL 111860. Similarly, defendant alleges that he learned of his ineffective assistance claim related to his victim's supposed toxicology in the same year. Finally, defendant claims he misplaced some documents, but by his own admission, that delay accounted for only four and a half months. Taking these allegations as true, by his own account, defendant waited over two years before filing his petition in September 2019.

¶ 23    Establishing a lack of culpable negligence depends "not only on when the claim is discovered but on how promptly the defendant takes action after the discovery." *People v. Davis*, 351 Ill. App. 3d 215, 218 (2004). In *Davis*, the defendant claimed in a belated postconviction petition that his trial counsel was ineffective for failing to file a notice of appeal. *Id.* at 216. But

because defendant waited "for over two years before filing his petition," the appellate court concluded that "it cannot be said that he was free from culpable negligence." *Id.* at 218. The record in this case compels the same conclusion: there is no explanation offered as to why defendant waited over two years to file his postconviction petition.

¶ 24    There are no facts in the record to explain this additional delay, and even with the able assistance of appellate counsel in this court, defendant has not suggested how postconviction counsel could have amended his petition to excuse the delay. See, *e.g.*, *People v. Cotto*, 2016 IL 119006, ¶ 50 (rejecting the defendant's argument that his postconviction attorney's representation was unreasonable where he "fails to explain what additional information should have been included by counsel in regard to the timeliness issue"); *Perkins*, 229 Ill. 2d at 51 ("We cannot assume there was some other excuse counsel failed to raise for the delay in filing."). Not every petition can be amended, and it "is presumed from the lack of an amendment that there were none to be made." *People v. Huff*, 2024 IL 128492, ¶ 24.

¶ 25    Given the absence of any affirmative evidence that postconviction counsel overlooked facts to excuse the untimely filing, defendant has failed to rebut the presumption of reasonable representation. The circuit court properly dismissed defendant's postconviction petition as untimely: "Under the Act, a petitioner's claims cannot be presented if they are untimely and the petitioner has not alleged facts showing the delay in filing was not due to his culpable negligence." *Perkins*, 229 Ill. 2d at 41. Indeed, this is precisely the same analytic construct that this division applied in affirming the dismissal of an untimely postconviction petition in another recent appeal. See *People v. Torres*, 2025 IL App (1st) 240332-U, ¶¶ 29-31 (Tailor, J., joined by Oden Johnson and Mitchell, JJ.).

¶ 26    Defendant argues that despite the time-bar, and his failure to articulate an amendment that would overcome it, he is nonetheless entitled to a remand based on *Addison*, 2023 IL 127119, ¶ 42. Not so. In *Addison*, postconviction counsel provided unreasonable assistance because "she identified several claims that she believed were worth pursuing but did not make the necessary amendments to put the claims in their proper form. Worse than that, she *eliminated* the necessary allegations that defendant had included in the *pro se* petition." *Id.* ¶ 25. Similarly, in *People v. Jean*, 2024 IL App (1st) 220807, ¶¶ 33-34, 47, where postconviction counsel's statements below and the record itself established a claim that counsel neglected to include in defendant's *pro se* petition, counsel failed to provide reasonable assistance. In contrast, here, there is no basis in the record on which to conclude that there is any viable amendment to be made.

¶ 27            B. None of the Additional "Deficiencies" Warrant Relief

¶ 28    Our conclusion on the untimeliness of defendant's petition disposes of this appeal. Defendant has raised additional "deficiencies" in postconviction counsel's performance. None of these "deficiencies" caused the circuit court to dismiss defendant's postconviction petition, and none are a basis for reversal in light of the time-bar. The general rule is that issues raised and decided on direct appeal are barred by *res judicata*. *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Issues that were not raised on direct appeal, but *could* have been, are forfeited. *Id.* Finally, when a defendant pleads guilty, he waives all non-jurisdictional defenses or defects, including constitutional ones. *People v. Del Vecchio*, 105 Ill. 2d 414, 433 (1985). These rules, individually and in combination, present additional procedural bars in this case. However, in light of our conclusion that defendant's petition is untimely, we do not reach these issues.

¶ 29                                        III. CONCLUSION

¶ 30     For all these reasons, the judgment of the circuit court dismissing defendant's postconviction petition is affirmed.

¶ 31     Affirmed.

¶ 32     JUSTICE ODEN JOHNSON, dissenting:

¶ 33     For the following reasons, I must respectfully dissent. Although as noted above, defendant appeals the second-stage dismissal of his postconviction petition, he raises only one issue for our consideration, namely, that his appointed postconviction counsel provided unreasonable assistance, in violation of Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 34     When a counsel does "not comply with Rule 651(c), our case law dictates that the cause should be remanded without a consideration of whether the [defendant's] claims have merit." *Addison*, 2023 IL 12719, ¶ 31; *People v. Suarez*, 224 Ill. 2d 37, 47 (2007) (our supreme court has "consistently held" that remand is required where postconviction counsel fails to fulfill Rule 651(c) duties, "regardless of whether the claims raised in the petition had merit"). Defendant does not need to show that he was prejudiced by postconviction counsel's unreasonable performance or that the underlying claim had merit, if the record shows that he did not receive reasonable assistance of postconviction counsel. *People v. Addison*, 2023 IL 1127119, ¶¶ 35, 42   Nonetheless, the majority opinion spends most of its time analyzing the timeliness of the petition which goes to the merits of the underlying claims, rather than the actual claim he raised: unreasonable assistance. Since so much of the background that is relevant to my dissent, such as his allegations of police abuse and the speed with which he sought to withdraw his guilty plea, was omitted from the above opinion, I will include it herein.

¶ 35                              SUMMARY

¶ 36    Defendant pled guilty to the murder of his cousin and received a 25-year sentence.    Less than a month later, he sought to withdraw his plea. Defendant's postconviction petition alleged that, prior to pleading guilty, he was abused by police during interrogations at the now infamous Area 2.    *People v. Wrice*, 2012 IL 111860, ¶ 40 (a report from the Chicago police department's Office of Professional Standards established that the abuse of prisoners and coerced confessions at Area 2 was widespread and systemic). This is a fact that cannot be ignored or swept under the proverbial procedural rug.

¶ 37    Further, counsel here did so little as to result in an almost superficial proceeding. On appeal, defendant's only claim is the unreasonableness of his counsel's assistance, which was demonstrated in numerous ways, such as: (1) counsel's failure to attach a notarized verification affidavit, although specifically required by the language of the Act; (2) his failure to attach the Office of Professional Standards (OPS) report identified in defendant's *pro se* petition that documented systemic abuse at Area 2 and, thus, supported defendant's pretrial claims of abuse; (3) allowing the State to assert that defendant had never before alleged police abuse when, in fact, the appellate record documented defendant's pretrial claims of abuse; and (4) failing to amend defendant's petition to avoid procedural bars. The question is whether this many examples, individually or in totality, rebut the presumption created by counsel's second Rule 651(c) certificate, when counsel's first filed certificate was factually inaccurate. *People v. Addison*, 2023 IL 127119, ¶ 27 (a singular but key failure to allege ineffectiveness of appellate counsel rose to the level of unreasonable assistance); *People v. Turner*, 187 Ill. 2d 406, 414 (1999) (the unreasonable assistance was evident from "the totality of circumstances in this case").

¶ 38 In response, the State claims that that the first three alleged failures were not the reason for the trial court's dismissal of defendant's petition and, thus, were "of little consequence." The State does not deny: (1) that counsel failed to attach a statutorily required affidavit; (2) that counsel did not attach the OPS report mentioned in defendant's petition; (3) that counsel stood silent while the State factually misrepresented the timing of defendant's abuse claims; and (4) that counsel made no amendment, supplement or addition to defendant's petition or any attempt to overcome procedural bars. The State argues that the trial court properly dismissed defendant's pro se petition because it was procedurally and temporally barred and meritless. However, as our supreme court has held, if we find that counsel failed to render reasonable assistance, then we should not be reviewing the merits of defendant's petition. *Addison*, 2023 IL 127119, ¶ 35 ("compliance" with Rule 651(c) must be shown regardless of whether the claims made in the petition are viable"). Thus, if we find unreasonable assistance, we don't get to the time bar issue.

¶ 39 For the following reasons, I find unreasonable assistance based on both the totality of the circumstances and the failure to supplement the petition with the statutorily required verification affidavit from defendant. Thus, I would remand for a new second-stage hearing with new counsel.

¶ 40                                   BACKGROUND

¶ 41                          I. The Facts Proffered at the Guilty Plea

¶ 42 On January 12, 2004, defendant entered a negotiated guilty plea to one count of first degree murder and was sentenced to 25 years with IDOC. The trial court found that his plea was knowing and voluntary and that there was a sufficient factual basis to support the plea. The State's proffer of a factual basis included the following.

¶ 43    The State began its proffer with a description of the expected testimony from Kenny Ingram, in whose apartment the victim was found, and from Ingram's girlfriend, DeJoie McClay. The State alleged that, if the case were to proceed to trial, Ingram would testify that on the evening of April 14, 2001, Jerry Easton and Ingram's girlfriend were in Ingram's apartment watching television, when defendant came over. Later, when the victim, Will Vinable, arrived, Vinable and defendant hugged each other and were happy to see each other.   At some point, defendant was complaining about his troubles with drugs and jail, and Vinable told him to shut up because Vinable had had similar troubles and was now clean and a drug counselor. Vinable also told defendant he had to take responsibility for the choices he made. Ingram went into the kitchen, where he could hear arguing in the living room but could not hear what was being said. When his girlfriend yelled his name, Ingram entered the living room, observed defendant running out the door, and observed Vinable with a stab wound. Vinable said "Morocco cut me."   Before the ambulance arrived, Ingram chased defendant and observed defendant with a long butcher-type knife in his hand.   When defendant raised the knife, Ingram asked, "are you going to cut me too." Ingram then received a page on his pager and returned to his apartment.

¶ 44    The State alleged that it would also call Ingram's girlfriend, McClay, who would testify to substantially the same initial facts as Ingram. In addition, McClay would testify that, after the victim told defendant that he was responsible for the choices he made, defendant walked over to the couch and stood in front of the victim who then stood up. The victim had no weapon in his hand, and he asked defendant to move back. Jerry Easton stepped in between the victim and defendant. As he stood between them, Easton faced the victim rather than defendant. McClay was sitting on the couch and watching, as defendant continued to argue with the victim. At some point,

McClay saw that defendant had a large butcher-type knife in his left hand. Defendant reached around Easton and stabbed Vinable in Vinable's right abdomen. Defendant then pulled the knife out of Vinable and ran from the apartment.

¶ 45    The State alleged that the parties would stipulate that, after being rushed to the hospital, Vinable died the next day. The State further alleged that the assistant medical examiner who performed the autopsy would testify that the cause of death was a stab wound to the right abdomen.

¶ 46    The State alleged that it would also call Detective Distasio who would testify that, on April 15, 2001, he was working in Area 2, when he went with Detective McGrath to defendant's apartment. When defendant answered the door, the detectives explained that they were investigating the death of Vinable, and defendant responded:  "you got me."  As defendant dressed, Detective Distasio observed a small tile-cutter knife on the floor, in the back pocket of a pair of pants, and a long bladed knife sticking out of a blender.   When Detective McGrath called the long knife to defendant's attention, defendant stated that it was the knife that he had used. The detectives seized both knives. After defendant was brought to Area 2, he was placed in a lineup and identified by Ingram, McClay and Easton.

¶ 47    Detective Distasio would further testify that, in the afternoon of April 15, 2001, defendant waived his Miranda rights after being advised of them and that the officers showed defendant the knives retrieved from his apartment. Defendant stated that the long knife was not the knife he had used. After defendant signed a consent form to search his apartment, Detective Distasio returned to defendant's apartment and located another long bladed knife, approximately 13 inches long with an 8-inch blade, with blood stains.   When defendant was later shown that knife, he said that it was the knife that he used.

¶ 48    The State alleged that it would call Dr. Amy Renstrom, a DNA analyst, who would testify that the blood found on the subsequently obtained knife matched the DNA profile of the victim. After the State finished its proffer, defense counsel stated that the defense would stipulate that, if this matter went to trial, those witnesses would be called and that would be their testimony. After the proffer and stipulation, defendant pled guilty and received the agreed sentence.

¶ 49                    II. Defendant's Motion to Withdraw His Plea

¶ 50    Less than a month later, on February 10, 2004, defendant mailed a motion to withdraw the plea that he had entered on January 12. IL S. Ct. R. 605(b)(2) (eff. Jan. 1, 2026) (a defendant has 30 days to file a motion for leave to withdraw his guilty plea).    In his motion, which was subsequently filed on February 19, defendant alleged that his counsel was ineffective for various reasons and that his plea was coerced. *People v. Smith*, 365 Ill. App. 3d 356, 357 (2006). On March 15, when the parties appeared in court, the State said that the trial court had previously appointed a private attorney to represent defendant at the hearing on his motion.    However, the court recalled only that it had asked the State to writ defendant in, which the State had done.    The court asked defendant if he had any additional argument, and he replied that he would stand on what he wrote.    His counsel, who was present, denied each allegation; and the trial court denied defendant's *pro se* motion. On appeal, defendant argued that his right to counsel was violated when the trial court heard his *pro se* motion to vacate without first determining whether he wanted new counsel and securing a waiver of his right to counsel.    *Smith*, 365 Ill. App. 3d 356, 357 (2006). This court agreed. We reversed the judgment of the trial court and remanded the case for further proceedings.

¶ 51    In February 2007, on remand, defendant filed, through counsel, a motion to withdraw his plea which alleged that, prior to accepting defendant's plea, the trial court failed to admonish him properly regarding a three-year required mandatory supervised release term (MSR).    During the pendency of the motion, the court appointed three different attorneys to represent defendant, and each one was permitted to withdraw, with defendant eventually permitted to proceed pro se. At the hearing on April 21, 2011, defendant, acting pro se, claimed, among other things, that his prior counsel abandoned his pursuit of OPS records, after only a partial report was received by the court, and that the court had denied counsel the right to review the partial report that had been received. At the hearing, his prior counsel testified and corroborated that the trial court had not permitted him to review the OPS records which had concerned the detectives who had interrogated defendant, and which had been given to the court. The trial court denied defendant's motion to withdraw his plea, and this court affirmed in 2013 on appeal.    *People v. Smith*, 2013 IL App (1st) 111906-U, ¶¶ 1, 5.

¶ 52                        III. Defendant's Federal Habeas Action

¶ 53    After exhausting his state remedies, defendant filed a *pro se* petition for a writ of habeas corpus in federal court.    *U.S. ex. rel. Smith v. Lemke*, 2014 WL 812075 (March 3, 2014), *2. (Michael Lemke was the warden of the prison where defendant was incarcerated. Smith, 2014 WL 812075 at *1.) Defendant alleged that he was not adequately admonished regarding the three-year MSR term before he pled guilty. *Smith*, 2014 WL 812075 at *3. The federal district court found that defendant had not presented a cognizable federal claim that would entitle him to habeas relief and so denied his petition on March 3, 2014. *Smith*, 2014 WL 812075 at *4.

¶ 54                        IV. Defendant's Pro Se Postconviction Petition

¶ 55    Over five years after the habeas denial, defendant filed a *pro se* postcoviction petition on September 19, 2019.    Although titled a "Successive Post-Conviction Petition," there was no prior petition, so this was his first one. The petition was accompanied by other *pro se* documents, including a motion to supplement the record, a memorandum of law, and a motion for appointment of counsel. Among other things, the petition alleged (1) the "pretrial litigation abandonment by appointed counsel" of defendant's claims of abuse by the arresting detectives, and (2) counsel's failure to continue investigating after the trial court denied an "in-camera inspection concerning detective's discipline records."

¶ 56    The petition referred to a report released by the "Offices of Professional Standards" in late 2002 or early 2003 that was "known to all law enforcement agencies." Defendant alleged that the report confirmed that the abuse of prisoners and coercion of confessions at Area 2 was widespread and systemic in 2000 and 2001, when defendant was there.    Defendant alleged that he "recently" learned of this report, as well as the "Egan's Report." Defendant alleged that the Egan Report was not released to the general public until July 19, 2006.    Defendant alleged that his plea counsel knew that defendant was "beaten by Chicago Police Detectives while at 111th St. Police Dept. Area #2."

¶ 57    Defendant alleged that, when he re-entered Stateville prison in January 2017, he learned from a jailhouse lawyer of a case that "brought to his attention" the Egan report, as well as a special prosecutor's report from April 2007 and other facts.    The petition called this information "newly discovered evidence" and alleged other instances of ineffective assistance by his plea counsel.

¶ 58    The petition also alleged that defendant had recently obtained through a "Freedom of Information Act Request" (FOIA) the autopsy report of the victim which showed that the victim

was on narcotics. Defendant alleged that this withheld fact prevented defendant "from preparing [a] reasonable defense of self-defense." The petition alleged that this was ineffective assistance if his counsel had withheld this fact from him or a "Brady violation" if the State Attorney's office had withheld it from counsel. The petition attached a police report with an "autopsy information" section for the victim. The autopsy-information section listed the date of the autopsy, the name of the medical examiner who performed it and the cause of death (stabbing). This section further stated: "Criminality: Narcotics." For contrast, defendant attached the toxicology report, which he states the defense received in 2002, and which showed only that the victim tested negative for the five substances that were tested: carbon monoxide, benzoylecgonine, ethanol, codeine and morphine.

¶ 59 The *pro se* petition was not notarized and did not include a notarized verification affidavit. 735 ILCS 5/122-1(b) (West 2020) (the Act requires the filing of a petition "verified by affidavit"). Instead, defendant wrote that his statements were made under penalty of perjury pursuant to a federal statute.

¶ 60                                  V. Postconviction Proceedings

¶ 61 On March 6, 2021, the trial court entered a note on the half-sheet indicating that the petition was not a successive petition, as the court had originally believed, but rather an initial petition. Since the petition was filed almost two years earlier, the note indicated that the petition was being advanced to the second stage "by operation of law." On April 9, 2021, the trial court held a zoom hearing with defendant, to inform him that his petition was being advanced to the second stage and to ask whether he wanted the public defender appointed to represent him, which defendant did. During a zoom hearing on April 23, 2021, an assistant public defender (APD) informed the court

that he had filed both an appearance and a proposed order to obtain the appellate record. Defendant was not present, and counsel waived his presence for the next court date. On April 23, the court entered an order for the clerk's office to produce the common law record, the report of proceedings, and any supplemental records for defendant's postconviction case, as well as for his two prior appellate cases.

¶ 62    At the next appearance, in July 2021, counsel waived defendant's presence and informed the court that he was still waiting for the appellate record. On September 14, 2021, counsel again waived defendant's appearance and informed the court that he was reviewing the appellate record and had a phone call set up with defendant on October 13.

¶ 63    On November 15, 2021, the APD filed a certificate pursuant to Supreme Court Rule 651(c), stating that he had consulted with defendant, examined the transcript of "his trial and sentencing," attempted to contact prior counsel, and "investigated numerous potential witnesses." The certificate stated that counsel was not filing a supplemental petition "as the pro se petition adequately presents" defendant's issues.    Although the certificate stated that he had examined the trial transcript, there was no trial in this case, since defendant had pleaded guilty. At a court appearance on November 17, 2021, defendant was not present, and counsel informed the court that he had filed his Rule 651(c) certificate.    When asked, counsel said there was no reason to writ in defendant for the next appearance.

¶ 64    On January 7, 2022, the APD filed an "amended" certificate that eliminated the prior reference to a trial and stated, instead, that he had examined the "report of proceedings and all appellate materials for this matter." Like the prior certificate, the amended certificate stated that he was not filing a supplemental petition because the *pro se* petition adequately presented

defendant's issues.    At the next appearances on January 11, March 1, and June 1, 2022, counsel waived defendant's appearance, and the matter was continued at the State's request.

¶ 65    At an appearance on August 30, 2022, the court informed the parties that it had received a letter from defendant the day before stating that defendant was "frustrated," that he "wants to know what's going on with this case" and that he "wants to have contact" with his counsel.    Counsel stated that he would "follow up" with defendant.    At the following appearances on October 18, and December 14, 2022, counsel waived defendant's appearance, and the matter was continued at the State's request.    A couple of months later, on February 9, 2023, the matter was again continued at the State's request.    On March 21, 2023, counsel waived defendant's appearance, and the matter was continued after counsel informed the court that the assistant State's attorney (ASA) was out sick. On April 18, and May 9, 2023, the matter was again continued at the State's request.

¶ 66                                VI. The State's Motion to Dismiss

¶ 67    On May 23, 2023, the State filed a written motion to dismiss, which noted the importance of supporting affidavits and "the difference between the federal notice-pleading standard and Illinois' fact-pleading standard." As detailed above, defendant had cited a federal statute when declaring his statements truthful. The State argued that a petition proceeds to a third-stage evidentiary hearing only when the alleged facts are "supported by the required documentation." The State contended:   "Petitioner's failure to meet any of the above requirements causes his petition to be fatal and justifies a court in denying any evidentiary hearing and dismissing the petition outright."

¶ 68    Next, the State argued that the petition was time-barred.    The State argued that, if a defendant does not file a petition for leave to appeal, then he has 35 days plus six months to file a postconviction petition, and that defendant did not file his petition until long after that. The State argued that defendant should have filed his petition after his 2013 appellate ruling; however, he did not file it until 2019.

¶ 69    In addition to being allegedly time barred, the State argued that any claims regarding his prior counsel or the trial court were also procedurally forfeited by defendant's plea of guilty and by his failure to raise the claims on appeal.

¶ 70    With respect to any claims of actual innocence due to police abuse, the State argued that the defense had "failed to supplement his petition with additional information or case law and solely filed a 651(c) certificate."    The State claimed that defendant's "2019 filing is the first time that [defendant] has alleged such allegations."    The State alleged that, "[a]s the record reflects, [defendant's] trial counsel filed a motion to suppress statements and nowhere within such motion does [defendant] claim any violent force being used" upon defendant. However, on appeal, the State now admits that it was mistaken when it claimed that defendant had not raised his abuse claims in the trial court.

¶ 71    Lastly, regarding the alleged ineffectiveness of prior counsel, the State argued that defendant could show neither unreasonable assistance nor prejudice. The State argued that, by pleading guilty, he relinquished any claims of error occurring prior to his plea. In addition, his argument depends on future events that his prior counsel could not have been aware of.    Further, the State argued that defendant's claim that the cause of death was from narcotics was "factually

- 21 -

incorrect." As noted above, this was not defendant's claim; defendant's claim was that the victim was on narcotics during the incident in question.

¶ 72 On May 23, 2023, after the State sought and received leave to file its written motion, counsel asked for "June 27th for [a] possible response," which was granted. However, at the court appearance on June 27, 2023, defense counsel stated that he was not going to file a response to the State's motion to dismiss.

¶ 73                                        VII. The Second Stage Hearing

¶ 74 On August 8, 2023, the court held a second-stage hearing on the State's motion and defendant's petition. The State argued, first, that the petition was time-barred because, even in the light most favorable to defendant, the Act's statute of limitations required his petition to be filed at the end of 2014. Second, the State argued that any claims regarding the MSR term were subject to *res judicata*. Third, the State argued that any claims regarding the ineffectiveness of his prior counsel were forfeited, because defendant could have raised them on his direct appeal and did not.

¶ 75 Fourth, the prosecutor stated that defendant raised a claim of actual innocence, based on what defendant recently learned concerning Area 2 during the years 2000 and 2001. The State noted that defendant alleged that detectives used violent force to obtain his signature on a consent form to search his premises and that they beat him. The State contended: "This is the first time the [defendant] has ever raised such allegations, Judge." The State argued:

> "And, as the record reflects here, [defendant's] trial counsel did, in fact, file a motion to suppress statements, and nowhere within the motion did [defendant] ever claim any violent force being used against him.

As noted above, the State concedes on appeal that these statements were factually incorrect.

¶ 76 Further, the State noted that, since the defense had failed to substantiate defendant's claim with supportive information or documentation "in any way," it had failed to meet defendant's burden at the second stage to make a showing of actual innocence. The State argued that, since this was a negotiated guilty plea, the defense would have to demonstrate, pursuant to *People v. Reed*, 2020 IL 124940, ¶ 49, that the evidence was new, material, and clearly and convincingly demonstrated that a trial would probably result in an acquittal.

¶ 77 The State acknowledged, although somewhat inaccurately, defendants claims of ineffectiveness, namely, that his counsel failed to pursue allegations of police abuse and withheld from defendant the fact that the victim died from narcotics. In response, the State argued that defendant's guilty plea was a break in the chain of events, such that defendant could not raise independent claims relating to deprivations that occurred prior to the entry of the plea, pursuant to *People v. Townsell*, 209 Ill. 2d 534, 545 (2004), and *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The State further contended that defendant's allegation that the victim died from narcotics was false. (As noted above, this was not defendant's claim.)

¶ 78 After listening to seven pages of argument by the State, defense counsel offered no response. Tacitly conceding the State's arguments, counsel offered only two boilerplate lines:

> "Judge, the petitioner's pro se petition that was filed back in 2019 adequately states its claims. I'd ask that you deny the State's motion on substantive and procedural grounds at this time and move to Stage 3."

¶ 79 The court replied that it was going to take the matter under advisement and that a written order would issue on August 24, 2023. The written order, entered on August 24, stated, in relevant part, that:

> "Upon review, the State's motion correctly summarizes the applicable law. Smith's claims are time barred, as well as procedurally barred. Furthermore, Smith's petition fails to establish a substantial showing of any constitutional violations, whether from ineffective assistance of counsel or an actual innocence claim.
>
> The petition is DISMISSED in its entirety."

The court's oral statement in open court on the same day substantially mirrored its written order.

¶ 80 On August 30, 2023, a notice of appeal was filed. On September 22, 2023, the court received a letter from defendant asking for a copy of the petition that was "of record" and that the court had denied. Defendant included a notice of appeal. This appeal followed.

¶ 81                                    ANALYSIS

¶ 82 On this appeal, defendant argues that his appointed postconviction counsel failed to provide reasonable assistance. For the following reasons, I agree.

¶ 83                    I. The Act's Stages and Standard of Review

¶ 84 The issue before us is not whether defendant is released or even whether he receives a third-stage evidentiary hearing. The relief requested here is minimal: another second-stage hearing with competent counsel.

¶ 85 As we all know, the Act provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If a defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. Domagala, 2013 IL 113688, ¶ 34.

¶ 86    In the case at bar, defendant's petition was dismissed at the second stage. When no evidentiary hearing is held, as occurred in this case, a reviewing court's standard of review is *de novo*. *Ealy*, 2024 IL App (1st) 221748, ¶ 35; *People v. Sanders*, 2016 IL 118123, ¶ 31. In addition, when the issue requires an interpretation of Supreme Court Rule 651(c) to determine if postconviction counsel provided the reasonable assistance that the rule requires, our review is *de novo*.   *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007). *De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform. *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 107.   Both parties agree that our standard of review is *de novo*.

¶ 87                                II. Reasonable Assistance

¶ 88    On this appeal, defendant is not arguing that he made a substantial showing. Instead, he is tacitly conceding that a substantial showing was not made and arguing instead that his postconviction counsel's assistance was unreasonable and therefore he deserves another second-stage hearing, with a different counsel who could presumably make the substantial showing that was previously lacking.

¶ 89    Defendant does not need to show that he was prejudiced by postconviction counsel's unreasonable performance or that the underlying claim had merit, if the record shows that he did not receive reasonable assistance of postconviction counsel. *People v. Addison*, 2023 IL 1127119, ¶¶ 35, 42.

¶ 90    In a postconviction proceeding, a defendant does not have a constitutional right to counsel. *People v. Addison*, 2023 IL 12719, ¶ 19. Rather, a defendant is entitled only to the level of assistance granted by state statute and rule, which our supreme court has labeled as "reasonable

assistance." *Addison*, 2023 IL 12719, ¶ 21. This level of assistance is "less than that afforded by the federal and state constitutions," and this level is appropriate in this context since the defendant has already lost the presumption of innocence. *Addison*, 2023 IL 12719, ¶ 19.

¶ 91 To ensure that appointed counsel provides reasonable assistance, our supreme court has specified counsel's duties in a rule, and this rule also requires that the record reflect satisfaction of these duties. Supreme Court Rule 651(c) provides, in relevant part, that:

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney [1] has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, [2] has examined the record of the proceedings at the trial, and [3] has made any amendments to the petition filed pro se that are necessary for an adequate presentation of petitioner's contentions." (Bracketed information added.) Ill. S. Ct. R. 615(c) (eff. July 1, 2017).

¶ 92 Once counsel files a Rule 651(c) certificate, as happened in this case, a rebuttable presumption arises that counsel provided reasonable assistance. If a certificate is filed, the defendant has the burden of overcoming the presumption and showing that counsel did not substantially comply with the rule. One way to overcome the presumption is to show that postconviction counsel "did not make all necessary amendments." *Addison*, 2023 IL 12719, ¶ 21. For example, the supreme court has stated that it is "clear" that "the failure to allege ineffective assistance of appellate counsel when necessary to overcome a forfeiture" is "a violation of Rule 651(c). *Addison*, 2023 IL 12719, ¶ 27, citing *Turner*, 187 Ill. 2d at 412-13.

¶ 93    The requirement that counsel make necessary amendments does not mean that counsel must expend effort to advance frivolous or patently nonmeritorious claims.    However, once counsel has reviewed the *pro se* petition and determined which claims to pursue, reasonable assistance requires counsel to shape those identified claims into proper form. *Addison*, 2023 IL 12719, ¶ 26.

¶ 94    Where "counsel did not comply with Rule 651(c), our case law dictates that the cause should be remanded without a consideration of whether the [defendant's] claims have merit." *Addison*, 2023 IL 12719, ¶ 31; *People v. Suarez*, 224 Ill. 2d 37, 47 (2007) (our supreme court has "consistently held" that remand is required where postconviction counsel fails to fulfill Rule 651(c) duties, "regardless of whether the claims raised in the petition had merit"); *People v. Turner*, 187 Ill. 2d 406, 415-17 (1999).    A defendant does not have to show prejudice to gain a remand, and counsel's failure to comply with Rule 651 is not subject to a harmless error analysis. *Addison*, 2023 IL 12719, ¶ 35.    In this way, "there is a significant difference between" what it takes to succeed "on a claim of unreasonable assistance of counsel at the second stage of postconviction proceedings," as opposed to "a claim of ineffective assistance of counsel under Strickland." *Addison*, 2023 IL 12719, ¶ 37.    The reason for this is that a defendant who succeeds on a *Strickland* claim gains the reversal of a conviction and a whole new trial, whereas a defendant who succeeds on an unreasonable assistance claim gains merely another second-stage postconviction proceeding. *Addison*, 2023 IL 12719, ¶ 37.

¶ 95    There is an inherent tension in these rules.    On the one hand, a postconviction counsel need not expend effort on a frivolous claim, which requires us to judge the merits of the claim; on the other hand, we are not to judge the merits of a claim if counsel did not render reasonable

assistance. In this case, the petition was advanced merely through operation of law. However, in most cases, a petition that advances to the second stage and gains counsel has already been adjudged to be non-frivolous.

¶ 96     The tension in these rules is illustrated by the claims on this appeal. Most of the State's arguments focus on the problems of the underlying claims--that they are procedurally or temporally barred or lack merit--rather than on the assistance of counsel itself, and whether it was, or was not, reasonable. As noted above, unreasonable assistance may be shown by a totality of the circumstances or by a singular but important failure. *Addison*, 2023 IL 127119, ¶ 27 (a singular but important failure to allege ineffectiveness of appellate counsel was unreasonable assistance); *Turner*, 187 Ill. 2d 406, 414 (unreasonable assistance was evident from "the totality of circumstances in this case"), cited with approval by *Addison*, 2023 IL 127119, ¶ 27. In this case, I find both.

¶ 97                                  III. Totality of the Circumstances

¶ 98     When one looks at the totality of the circumstances in the case at bar, except for the certificate, the record does not reflect that counsel did anything-- no verification affidavit as required by statute; no supplements, amendments or additions to the petition of any kind, not even the Egan report specifically identified by defendant; no cites to caselaw; no written response to the State's motion; no attempt to avoid temporal or procedural bars; and no voiced objection to the State's oral argument, even when the State misstated key facts, such as the State's now concededly mistaken argument that defendant had never raised abuse claims before, when he most definitely had. Counsel's relative silence, after the States's seven pages of oral argument, effectively communicated to the court counsel's actual position; at that moment, defendant would have been

better off with no counsel at all. Transcripts indicate that counsel setup a phone call with defendant but also that he consistently waived his client's appearance for two years and that his client wrote the court seeking contact with counsel. Obviously, if defendant's appearance had not been waived, the factual errors would most likely have been corrected. Counsel's first Rule 651(c) certificate was also factually incorrect. It took two tries to file a factually accurate certificate. While the certificate stated that counsel had investigated numerous potential witnesses, the first filing also certified that he had read non-existent trial transcripts. *People v. Turner*, 187 Ill. 2d 406, 416-17 (1999) ("it is improper to determine the merits of petitioner's claims where counsel essentially did nothing to shape the petitioner's claims into the appropriate legal form").

¶ 99    It is particularly disturbing that the State misstated facts regarding defendant's abuse claims and that counsel failed to correct the mistake. Defendant's claims of abuse were not new. As noted above, during interrogation, defendant allegedly consented to a police search of his home and allegedly admitted that a knife found during a subsequent search was the one "he had used."   On June 20, 2003, months before his plea, defendant filed a motion to suppress his consent and his statements. His motion alleged, in relevant part:

"a. The defendant was physically beaten by members of the Chicago Police Department for the purpose of obtaining a statement and the signing of a Consent to Search.

b. Said abuse was at the hands of two detectives believed to be Detectives McGrath [badge number] & Distasio [badge number]."

¶ 100   The motion also alleged that the police used psychological and mental coercion. One of the detectives stated that he would " 'kick his ass' " if he did not sign the consent form.   While defendant did not suffer an "actual physical injury," he believed that "the detective would make-

good his threat to do bodily harm and subsequently signed the Consent and made statements against his will." The motion further alleged that the police did not read defendant his *Miranda* rights and ignored his request for an attorney. Thus, the State's uncontradicted statement that defendant had never before raised abuse claims was wildly off the mark, and counsel's silence in response indicates ignorance of the record. *Addison*, 2022 IL 127119, ¶ 36 ("in Brown, we held that a remand was required for the sole reason that the record did not show that postconviction counsel had examined the trial record"), citing *People v. Brown*, 52 Ill. 2d 227, 230 (1972).

¶ 101 Counsel also did not object when the State repeatedly misstated defendant's toxicology claim, both in its written motion and again in its oral argument. Although defendant's petition stated that the victim's toxicology information would have supported a claim of self-defense, the State asserted, wrongly, that defendant's claim was that the victim had died from narcotics rather than a stabbing. Again, the lack of an objection to this statement indicates ignorance of the record. Given the brevity of the trial court's order, there is no way to tell how much these false statements contributed to its decision.

¶ 102 The State does not deny: (1) that counsel did not attach the required affidavit; (2) that counsel did not attach the OPS report identified in defendant's petition; (3) that counsel permitted the State to factually misrepresent the timing of defendant's abuse claims; and (4) that counsel made no amendment, supplement or addition to defendant's petition of any kind.

¶ 103 The State argues that these conceded actions by counsel make no difference because defendant's claims were procedurally and temporally barred and meritless. However, if we find no reasonable assistance, then we should not be reviewing the merits of defendant's petition. *Addison*, 2023 IL 127119, ¶ 35 ("compliance" with Rule 651(c) must be shown regardless of

whether the claims made in the petition are viable"). Thus, for all the reasons listed above (*supra* ¶¶ 97-101), I would find that the totality of the circumstances shows unreasonable assistance by counsel.

¶ 104 The majority asserts that we faced a similar situation in *People v. Torres*, 2025 IL App (1st) 240332-U, ¶¶ 29-31 (Tailor, J., joined by Oden Johnson and Mitchell, JJ). However, that case was a Rule 23 order without precedential value. Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025). We found in the *Torres* case that postconviction counsel *had* reviewed the record and its transcripts, investigated the defendant's claims, and subpoenaed relevant police records. *Torres*, 2025 IL App (1st) 240332-U, ¶¶ 9, 21. That is a far cry from the case at bar where counsel permitted the State to factually misrepresent defendant's claims. There simply was no representation here and defendant was not present, resulting in a proceeding in name only.

¶ 105                                III. Verification Affidavit

¶ 106 Not only do I find unreasonableness from the totality of the circumstances, I further find that a singular failure, namely, the failure to attach a verification affidavit, established the unreasonableness of counsel's assistance.

¶ 107 The State argues that any failure by counsel in not including a verification affidavit is irrelevant because the State allegedly did not move on that basis and the trial court allegedly did not rule on that basis.

¶ 108 However, among the many things argued by the State before the trial court was the fact that counsel made no additions and no supplements and filed only a Rule 651(c) certificate. The trial court found that the State was "correct," but without specifying particular issues. Since counsel offered no argument or objection, there was little reason for the trial court to specify what

it found persuasive. The trial court's succinct order noted only that defendant's claims were temporally and procedurally barred and that the petition failed to make a substantial showing of his claims. When a court simply quotes the overarching "statutory standard[s]" in both open court and in its written order, it is not possible from the record to tell what role individual sub-issues played in its decision. *Addison*, 2023 IL 127119, ¶ 40. Without a verification affidavit, the petition was, in fact, procedurally barred, and it could not make a substantial showing or overcome a temporal bar. *People v. Turner*, 187 Ill. 2d 406, 414 (1999) (appointed counsel's failure to attach any affidavits, "even an affidavit from petitioner," was fatal to his claims).

¶ 109    Section 5/122-1(b) of the Act requires the filing of a petition "verified by affidavit." 735 ILCS 5/122-1(b) (West 2020). "The petition shall have attached affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 735 ILCS 5/122-1(b) (West 2020). Counsel failed to amend the petition to include a verification affidavit and failed to state why one was not attached. The lack of a verification affidavit is indisputably a procedural defect and a second-stage ground for dismissal, by itself. *People v. Hommerson*, 2014 IL 115638, ¶ 14. It is difficult to imagine what would more clearly rebut the presumption created by the certificate than a clear violation of the statutory language of the Act itself. Cf. *Addison*, 2023 IL 127119, ¶ 28.

¶ 110    The State argues that, since it did not specifically note the absence of a verified affidavit in its dismissal motion, the issue is moot. However, we observe, first, that counsel chose not to add a verification affidavit before he knew what would be in the State's motion. *Ealy*, 2024 IL App (1st) 221748, ¶ 32 (first, counsel decides whether to amend, and then the State may file a motion).

¶ 111   The State's principal argument regarding the affidavit is premised on its assertion that the trial court did not rule on this basis. However, this argument overlooks the fact that the State did argue to the trial court that counsel failed to supplement the petition and that the trial court found procedural default without specifying the underlying issues.   The State cites in support an unpublished Rule 23 order which lacks precedential authority, although we may cite it if we find it analogous and persuasive.   Ill. S. Ct. R. 23(e)(1) (June 3, 2025).

¶ 112   However, the cited order is neither analogous nor persuasive.   In *People v. Velasquez*, 2024 IL App (1st) 231046-U, ¶ 43, the appellate court observed that it is "undisputed that the State did not raise the issue" of the missing notarized affidavit.   By contrast, in this case, it is very disputed.   Defendant's reply brief has two paragraphs of quotes and cites to the record where the State's motion pointed out to the trial court the petition's pleading defects, including the importance of a supporting affidavit and that the failure to meet these requirements justified dismissal. As defendant notes, the trial court found the State's arguments well-grounded, and there is no reason to believe that it accepted every other argument but that one.

¶ 113   Further, the *Velasquez* order cites with approval the opinion of *People v. Nitz*, 2011 IL App (2d) 100819. *Velasquez*, 2024 IL App (1st) 231046-U, ¶¶ 39, 41. In *Nitz*, 2011 IL App (2d) 10031, ¶ 17, the pro se petition included an affidavit that referenced the certification section of the Code (735 ILCS 5/1-109 (West 2020)), but was not notarized. In *Nitz*, there was no indication that the State moved to dismiss on that ground, and the trial court dismissed on other grounds. *Nitz*, 2011 IL App (2d) 10031, ¶ 8. However, on appeal, the *Nitz* court still found a violation of Rule 651(c) due to counsel's failure to provide something so basic as a proper affidavit. *Nitz*, 2011 IL App (2d) 10031, ¶ 17.

¶ 114    The State cites *Nitz* and then tries to distinguish it in the next line, by arguing:    "However, that is not the basis for dismissal in this case."    This tack makes little sense, since the lack of an affidavit was not the basis for the trial court's dismissal in *Nitz* either.

¶ 115    The State also attempts to distinguish the court's opinion in *People v. Madison*, 2023 IL App (1st) 221360, ¶ 43 which held--unequivocally--that "postconviction counsel acts unreasonably when she fails to amend a pro se petition to provide a proper verification affidavit." The State attempts to distinguish *Madison* by arguing that, in *Madison*, the State had moved to dismiss on that basis.    However, the opinion in *Madison* did not limit its unequivocal statement, with a clause that said:    "but only if the State moves on that basis."    Instead, like *Velasquez*, the opinion cited in support *Nitz*, where no such basis by the State was cited.    *Madison*, 2023 IL App (1st) 221360, ¶ 43 (citing *Nitz* first, as well as other cases); *Nitz*, 2011 IL App (2d) 100031, ¶ 8 (no indication that the State moved to dismiss on that ground, and the trial court dismissed on other grounds).

¶ 116    I cannot think of any reason for not filing a verification affidavit, unless counsel is simply throwing in the proverbial towel on the whole petition. As a result, I would find that this is an independent basis for finding unreasonable assistance, in addition to the totality of circumstances already discussed above.

¶ 117                                    CONCLUSION

¶ 118    For the foregoing reasons, I would reverse and remand for another round of second-stage postconviction proceedings with new counsel. I take no position on defendant's petition because on remand new counsel would be free to amend it or supplement it with additional points,

arguments, or affidavits *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 36 ("it was error to reappoint the same APD after this court found that his representation was unreasonable").]

***People v. Kenneth Smith*, 2026 IL App (1st) 231635**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 01 CR 11391; the Hon. Alfredo Maldonado, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, State Appellate Defender, of Chicago (Douglas R. Hoff, Deputy Defender, Matthew Paul Kralovec, Assistant Appellate Defender), for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, County of Cook (John E. Nowak, Andrew D. Yassan, Taylor K. Santell, Assistant State's Attorneys, of counsel), for the People. |